**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT OBERG and WILLIAM WUNSCH | ) | CASE NO.: |
| c/o Chris Wido, Esq. | ) | |
| The Spitz Law Firm, LLC | ) | JUDGE: |
| 25200 Chagrin Blvd, Suite 200 | ) | |
| Beachwood, Ohio, 44122 | ) | |
| | ) | **COMPLAINT FOR VIOLATIONS** |
|     On behalf of themselves and all | ) | **OF THE FAIR LABOR STANDARDS** |
|     others similarly-situated | ) | **ACT AND THE OHIO MINIMUM** |
| | ) | **FAIR WAGES STANDARDS ACT** |
|                   Plaintiff, | ) | |
|     v. | ) | |
| | ) | **(Jury Demand Endorsed Herein)** |
| INPAX SHIPPING SOLUTIONS INC | ) | |
| C/O Leonard Wright | ) | |
| 2444 Forrest Park Rd SE, | ) | |
| Atlanta, Georgia, 30315 | ) | |
| | ) | |
|     and | ) | |
| | ) | |
| INPAX SHIPPING SOLUTIONS INC. OF | ) | |
| OHIO (INPAX SHIPPING SOLUTIONS | ) | |
| INC) | ) | |
| C/O Leonard Wright | ) | |
| 2444 Forrest Park Rd SE, | ) | |
| Atlanta, Georgia 30315 | ) | |
| | ) | |
|     **Serve also:** | ) | |
|     David Williams, Statutory Agent | ) | |
|     4250 Port Union Road, Suite 100 | ) | |
|     (Inpax) | ) | |
|     West Chester, Ohio, 45011 | ) | |
| | ) | |
|     -and- | ) | |
| | ) | |
| INSS, LLC | ) | |
| C/O Leonard Wright | ) | |
| 2444 Forrest Park Rd SE, | ) | |
| Atlanta, Georgia 30315 | ) | |
| | ) | |
|                 Defendants. | ) | |

1

## INTRODUCTION

1. Defendants Inpax Shipping Solutions, Inc., Inpax Shipping Solutions of Ohio (Inpax Shipping Solutions, Inc.), and INSS, LLC ("Defendants") failed to pay Plaintiff Scott Oberg and other delivery drivers at least the minimum wage for all hours worked; calculated overtime wages incorrectly; and failed to pay all overtime due. Accordingly, Defendants' conduct violated the Fair Labor Standards Act ("FLSA"), 29 USC 203(m)(2) & (t); 29 CFR 531.59. On behalf of himself and all other similarly situated employees, Oberg brings this action as a collective action under the FLSA, 29 U.S.C. § 216(b).  Members of the collective action are referred to as the "**FLSA Collective Class Members.**"

## PARTIES

2. Oberg is an individual residing in Cuyahoga County, Ohio. Oberg performed work for Defendants within the last three years for which he did not receive the minimum wage or the proper overtime wages guaranteed by the FLSA. Oberg's signed consent to sue form will be filed within the next twenty-one (21) days.

3. Wunsch is an individual residing in Cuyahoga County, Ohio. Oberg performed work for Defendants within the last three years for which he did not receive the minimum wage or the proper overtime wages guaranteed by the FLSA. Wunsch's signed consent to sue form will be filed within the next twenty-one (21) days.

4. Inpax Shipping Solutions, Inc., ("Inpax") is a for-profit corporation organized under the laws of the State of Georgia, and who maintains offices in Cincinnati, Ohio.

5. Inpax Shipping Solutions of Ohio (Inpax Shipping Solutions, Inc.)("Inpax Ohio") is a for-profit corporation organized under the laws of the State of Ohio, and who maintains offices in Cincinnati, Ohio.

2

6.  INSS, LLC is a for-profit corporation organized under the laws of the State of Ohio, and who maintains offices in Cincinnati, Ohio.

7.  At all times referenced herein, Inpax, Inpax Ohio, and INSS exercised control over the employment of Oberg and those similarly-situated.

8.  At all times referenced herein, Inpax, Inpax Ohio, and INSS had the power to hire and fire Oberg and those similarly-situated.

9.  At all times referenced herein, Inpax, Inpax Ohio, and INSS supervised the schedules of Oberg and those similarly-situated.

10. At all times referenced herein, Inpax, Inpax Ohio, and INSS determined how Oberg and those similarly-situated would be paid.

11. At all times referenced herein, Inpax, Inpax Ohio, and INSS maintained employment records for Oberg and those similarly-situated.

12. At all times referenced herein, Inpax, Inpax Ohio, and INSS jointly employed Oberg and those similarly-situated as to constitute an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

13. The FLSA Collective Class Members are all current and former Delivery Drivers and/or "Delivery Associates," or employees in substantially similar positions and/or with similar job titles, that worked for Defendants at any time during the three-year period before the filing of this Complaint to present who were not paid all minimum wages and overtime wages due.

## PERSONAL JURISDICTION

14. Defendants hire citizens of the state of Ohio, contract with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

15. Oberg and those similarly-situated performed work in this judicial district, were paid unlawfully by Defendants pursuant to work performed in this district and/or were hired out of this district.

16. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

18. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

## COVERAGE

19. At all times referenced herein, Inpax, Inpax Ohio, and INSS formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

20. At all times material to the Complaint, Oberg and those similarly-situated directly participated in the actual movement of things in interstate commerce by regularly using instrumentalities of interstate commerce in their work, namely by regularly and recurrently delivering Amazon.com packages from outside of Ohio to customers homes and businesses in Ohio.

## FACTS

### (Facts Pertaining To Defendants; Their Business Model And Compensation Practices; And Violations Of The FLSA).

21. Defendants operate an Amazon delivery service.

22. Defendants receive packages ordered by end-users from Amazon and distribute those packages locally to their intended recipients via Delivery Drivers and/or "Delivery Associates," who operate vans and trucks maintained owned and maintained by Defendants.

23. Defendants operate out of Amazon Fulfillment Centers located around the country.

24. Defendants are incentivized by Amazon to deliver packages as quickly and efficiently as possible.

25. Amazon would review the route times and hours of Delivery Drivers and/or Delivery Associates to determine how quickly and efficiently Defendants operated their business.

26. Amazon would decrease the number of packages it gave Defendants to deliver if metrics related to delivery time and efficiency suffered.

27. Amazon would increase the number of packages it gave Defendants to deliver if metrics related to delivery time and efficiency improved.

28. In order to present the most favorable time metrics possible to Amazon, Defendants had an interest in keeping the time recorded by Delivery Drivers and/or Delivery Associates as low as possible.

29. As demonstrated by the attached job posting for a Delivery Associate, Defendants promised to pay Delivery Drivers and/or Associates $140.00 to $160.00 a day:



30. Defendants' "salary" scheme was not localized to the Cleveland, Ohio area; ads from around the nation where Defendants have offices demonstrate that Defendants offer a daily salary to all prospective Delivery Drivers and/or Delivery Associates.[2]

---

[1] Exhibit "A"
[2] See Exhibit "B," (job posting from Cincinnati, Ohio); Exhibit "C," (job posting from Charlotte, North Carolina); Exhibit "D," (job posting from Chicago, Illinois); Exhibit "E," (job posting from Dallas, Texas).

31. Despite the promise of a daily salary, Defendants would pay Delivery Drivers and/or Delivery Associates a low hourly wage, typically between $9.00 and $11.00 per hour, and then pay the difference of the "salary" as a "bonus." This was usually listed on employee's pay stubs as "GMR bonus."

32. By way of example, a true and accurate copy of the December 15, 2018 paystub for Wunsch shows that he was paid $140.00 for the six days he worked that week, notwithstanding the purported hourly rate of $9.33 per hour shown:



33. Wunsch's pay stub demonstrates that he was paid a total of $840.53 between his hourly pay and GMR bonus; divided by six, this equals $140.08.

34. The GMR bonus was non-discretionary; it is how Defendants "made-up" the gap between the hourly rate they actually paid Delivery Drivers and/or Delivery Associates and the advertised salary rate.

---

[3] Exhibit F.

35. From time to time, Delivery Drivers and/or Delivery Associates would perform "rescues" after completing their routes.

36. A "rescue" is where the Delivery Driver and/or Delivery Associate meets with another Driver who is behind on delivering their packages and takes several of that Driver's packages to help them complete their route.

37. Defendants clocked out Delivery Drivers and/or Delivery Associates before they performed "rescues."

38. Delivery Drivers and/or Delivery Associates were paid anywhere from $50.00 to $100.00 to perform "rescues." These payments appeared as "Bonus2" on their paystubs.

39. As demonstrated by Wunsch's pay stub, Defendants based his overtime rate strictly on his hourly rate, and not based on all pay that should be included in the regular rate, including both the GMR bonus and "Bonus2," in violation of 29 U.S.C § 207(e).

40. Defendants method of paying Delivery Drivers and/or Delivery Associates further demonstrates an intentional and willful effort by Defendants to avoid paying these employees any overtime at all.

41. As demonstrated by Wunsch's pay stub, if Wunsch worked 46.32 hours, his resulting regular rate of pay was $19.22 – more than $5.00 per hour more than the "overtime" rate he was paid.

42. At all times referenced herein, Defendants had a practice of under-recording the hours Delivery Drivers and/or Delivery Associates worked.

43. For example, although Wunsch's pay check shows only 46.32 hours, he in reality worked closer to 70 hours that week: six days, and approximately 10-12 hours each day, from 8:00am to 6:00pm, 7:00pm, or 8:00pm.

44. Upon information and belief, Wunsch worked 63.6 hours the week of December 9, 2018, resulting in a flat hourly rate of $14.00 – the same "overtime" rate he received.

45. Thus, despite purporting to pay its Delivery Drivers and/or Delivery Associates "overtime," in reality Defendants paid these employees a flat hourly rate.

46. The purpose of under-recording the hours Delivery Drivers and/or Delivery Associates worked served two purposes: to reduce Defendants' overtime obligations, and to improve the statistical data Amazon reviewed from Inpax.

47. At all times referenced herein, Defendants regularly failed to pay Delivery Drivers and/or Delivery Associates for all hours worked during a given week, resulting in sub-minimum wages.

48. From time to time, Defendants failed to pay Delivery Drivers and/or Delivery Associates for one or more days they worked.

49. Upon information and belief, managers from Defendants Cleveland, Ohio offices contacted Defendants corporate headquarters in Atlanta, Georgia on several occasions about inadequate and incorrect pay, and where ignored.

50. Upon information and belief, Defendants routinely withhold the final paychecks of employees whose employment with Defendants ends.

51. Defendant's failure to properly pay Delivery Drivers and/or Delivery Associates is not limited to the Cleveland, Ohio area; complaints by current and former employees about not being paid correctly or at all can be found on www.indeed.com and other websites.[4]

---

[4] Exhibit "G."

52. At all times referenced herein, the Delivery Drivers and/or Delivery Associates employed by Defendants did not cross state lines while performing their deliveries and could not reasonably be expected to be called upon to perform deliveries outside of the state they resided in.

**(Facts Concerning Plaintiff Oberg)**

53. Oberg was initially hired by Defendants in or around November of 2018, when his former employer was acquired by Defendants.

54. Oberg was earning $15.00 per hour prior to Defendants' acquisition of his former employer.

55. Oberg was paid overtime at a rate of one-and-one-half times his regular rate for all hours worked over 40 in a given week by his former employer.

56. Upon being hired, Oberg was told he would be paid $140.00 a day, regardless of the number of hours he worked.

57. When Oberg started receiving his paychecks from Defendants, he noticed that it showed an hourly rate of $9.33 per hour plus a "GMR bonus" that would make up the difference between his hourly wage and $140.00 per day.

58. During his employment with Defendants, Oberg typically reported to work at 8:00am.

59. Oberg would typically work until 6:00pm to 8:00pm, but occasionally worked until late in the evening.

60. On some occasions, Oberg would be out completing deliveries until 10:00pm or later.

61. Oberg frequently worked for Defendants four to six days a week.

62. Initially, Oberg would record his own hours using a tablet device.

63. Soon after Oberg began working for Defendants, Defendants stopped allowing Oberg to record his own hours.

10

64. Defendants would log Oberg in and out using a tablet device; Oberg was not permitted to record his own hours.

65. On several occasions, Oberg completed "rescues" after completing his route for the day.

66. Defendants would log Oberg out before he went to complete "rescues."

67. Oberg regularly worked in excess of 40 hours per week while he was working for Defendants.

68. Oberg was not paid overtime for any hours he worked over 40 in a given week.

69. Defendants intentionally undercounted the number of hours Oberg actually worked as part of their scheme to reduce the number of hours they had to pay "overtime" (actually a flat rate) to Oberg.

70. In or around February of 2019, Oberg resigned his employment with Defendants.

71. Oberg resigned his employment after police were called on him while he was delivering packages after 10:00pm at night and a resident reported Oberg's truck as suspicious to police.

72. Oberg was not charged with any crime but the incident was enough for Oberg to decide that he no longer wanted to work for Defendants.

### (Facts Concerning Plaintiff Wunsch)

73. Wunsch was initially hired by Defendants on or about November 25, 2018.

74. During his interview, Wunsch was told he would be paid $140.00 per day for his first 30 days of employment; $150.00 a day after his first 30 days, and $170.00 per day after his first 90 days.

75. When Wunsch started receiving his paychecks from Defendants, he noticed that it showed an hourly rate of $9.33 per hour plus a "GMR bonus" that would make up the difference between his hourly wage and $140.00 per day.

76. Wunsch frequently worked for Defendants four to six days a week.

11

77. Defendants would log Wunsch in and out using a tablet device; Wunsch was not permitted to record his own hours.

78. Wunsch regularly performed "rescues" after completing his route.

79. Defendants would log Wunsch out before he performed any "rescues."

80. Wunsch regularly worked in excess of 40 hours per week while he was working for Defendants.

81. Wunsch was not paid overtime for any hours he worked over 40 in a given week and/or was underpaid overtime.

82. Defendants intentionally undercounted the number of hours Wunsch actually worked as part of their scheme to reduce the number of hours they had to pay "overtime" (actually a flat rate) to Wunsch.

**(Defendant's Violations Of The FLSA Were Willful, Reckless, And Committed Without A Good Faith Belief That Such Conduct Was Lawful).**

83. In 2016, Defendants were sued by an employee named Artimmeo Williamson in the Northern District Court of Illinois for violations of the FLSA and Illinois wage and hour laws. That case was called *Artimmeo Williamson v. Inpax Shipping Solutions, LLC*, No. 1:16cv10745 ("*Williamson* Litigation")

84. In the *Williamson* Litigation, the plaintiff alleged that he had "not been paid the overtime premium of one and a half times their regular rate of pay for all time worked in excess of forty hours in individual work week."

85. Defendants did not contest the *Williamson* litigation, instead tendering an offer of judgment.

86. Defendants persisted in maintaining unlawful compensation policies as to Plaintiffs and those similarly-situated even after the *Williamson* n litigation had concluded and Defendants had conceded that they violated the FLSA.

12

87. The *Williamson* litigation put Defendants on notice that their conduct had violated the FLSA.

88. Defendants attempted to cover-up the fact that they were not actually paying overtime to Plaintiffs and those similarly-situated through the methodology they used to calculate their pay, to include altering the hours worked by Plaintiffs and those similarly-situated to perpetuate the scheme.

89. Defendants were regularly made aware of complaints by employees that Delivery Drivers and/or Delivery Associates were not being paid correctly, yet Defendants took no steps to address these concerns.

90. Upon information and belief, Defendants regularly and intentionally withheld the final paychecks of Delivery Drivers and/or Delivery Associates.

91. Defendants conduct evidences a concerted, intentional and willful effort to frustrate and circumvent the minimum wage and overtime requirements of the FLSA.

92. Defendants violations of the FLSA are so egregious and intentional that Defendants could not and did not maintain a good faith belief that their conduct complied with the FLSA.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

93. Plaintiffs incorporates by reference the allegations in the preceding paragraphs.

94. Plaintiffs brings this as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all similarly-situated individuals who are part of the following class:

> All current and former Delivery Drivers, Delivery Associates, or other substantially similar positions and/or with similar job titles who worked for Defendants at any time during the three-year period before the filing of this Complaint to present.

95. Collective Action treatment of Plaintiffs' FLSA claim is appropriate because Plaintiffs and the FLSA Collective Class Members have been subjected to the common business practices referenced in paragraph 20-51 *supra*, and the success of their claims depends on the resolution

of common issues of law and fact, including, *inter alia*, whether Defendants' enterprise-wide practices failed to properly compensate the FLSA Collective Class Members for all hours worked.

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT

96. Plaintiffs restate each and every prior paragraph of this Complaint, as if it were fully restated herein.

97. Section 6 of the FLSA, 29 U.S.C. § 206, establishes the right to be paid minimum wages. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), entitles an employee to recover all unpaid wages, an equivalent amount as liquidated damages, and reasonable attorneys' fees and costs.

98. At all times relevant to this action, Defendants willfully failed and refused to pay Plaintiffs and those similarly-situated the applicable minimum wages required by the FLSA, causing Plaintiffs and those similarly-situated to suffer damage in amounts to be proven at trial.

99. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

100. Plaintiffs and those similarly-situated were not exempt from the right to receive overtime pay under the FLSA during their employment with Defendants.

101. Plaintiffs and those similarly-situated are entitled to be paid overtime compensation for all overtime hours worked.

102. At all times relevant to this Complaint, Defendants had a policy and practice of failing and refusing to pay overtime to its employees for their hours worked in excess of 40 hours per week, and in fact perpetuated a scheme to hide from these employees the fact that they were not actually being paid overtime.

103.    Defendants either recklessly failed to investigate whether their failure to pay Plaintiffs and those similarly-situated at least a minimum wage for all of the hours they worked during the relevant time period violated the Federal Wage Laws of the United States, they intentionally misled Plaintiffs and those similarly-situated to believe that Defendants were not required to pay him at least a minimum wage, and/or Defendants concocted a scheme pursuant to which they deprived Plaintiffs and those similarly-situated the minimum wage pay he earned.

104.    Defendants either recklessly failed to investigate whether their failure to pay Plaintiffs and those similarly-situated overtime violated the Federal Wage Laws of the United States, they intentionally misled Plaintiffs and those similarly-situated to believe that Defendants were paying overtime correctly, and/or Defendants concocted a scheme pursuant to which they deprived Plaintiffs and those similarly-situated the overtime pay they earned.

105.    At all times relevant to this Complaint, the Defendants were, have been, and continue to be "employers" within the meaning of the FLSA 29 U.S.C. § 203(d).

106.    Defendants have failed to make, keep, and preserve records with respect to Plaintiffs and those similarly-situated, sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and § 215(a).

107.    Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

108.    Plaintiffs and those similarly-situated are entitled to damages in the amount of their unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including their attorneys' fees and costs.

15

109.    Defendants violated the FLSA without a good faith belief that their conduct was lawful.

110.    Plaintiffs requests recovery of their attorney's fees and costs associated with this cause as

provided by 29 U.S.C. § 216(b)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Scott Oberg and William Wunsch respectfully request relief

against Defendants as set forth below:

a. Designating this action as a collective action on behalf of Plaintiff and the Collective they represent pursuant to the Fair Labor Standards Act, issuing notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective apprising them of the pendency of this action, which will permit them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b), and equitably tolling the statute of limitations from the date of filing this Complaint until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. § 216(b);

b. Designating Plaintiffs SCOTT OBERG and WILLIAM WUNSCH as the representative for the Collective;

c. Awarding Plaintiff and the Collective unpaid minimum wages and unpaid overtime wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

d. Awarding damages, including actual, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff and Class members in an amount to be determined at trial;

e. Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §§ 201 *et seq.*.;

f. Issuing an injunction prohibiting Defendants from continued unlawful practices, policies and patterns set forth herein;

g. Awarding pre-judgment and post-judgment interest as provided by law;

h. Awarding reasonable attorneys' fees and costs; and

i. Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

/s/ Chris P. Wido
Chris P. Wido (0090441)
Tina M. Scibona (0092008)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorneys for Plaintiffs Scott Oberg and*
*William Wunsch*

## JURY DEMAND

Plaintiffs Scott Oberg and William Wunsch demand a trial by jury by the maximum number of jurors permitted.

/s/ Chris P. Wido
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**